No. 46,669

G. Paul Van Valkenburgh, *Appellant*, v. State Board of Social
Welfare of Kansas, *Appellee.*

(508 P. 2d 875)

Opinion filed April 7, 1973.

*Scott E. Jarvis,* of Topeka, argued the cause and was on the brief for the
appellant.

*Woody D. Smith,* of Topeka, argued the cause and was on the brief for the
appellee.

The opinion of the court was delivered by

Foth, C.: Appellant, plaintiff below, is a man of middle age who
has been blind since the age of four. He brought this action
against the state department of social welfare alleging a breach
of an implied contract under which he claimed the department
was obligated to assist him in a program of vocational rehabilitation
and, more importantly, to assist him in finding suitable employ-
ment. His petition seeks damages for the alleged breach.

After securing plaintiff's deposition and answers to interrogatories
the department moved for summary judgment. The motion was
sustained and this appeal followed.

The history of plaintiff's relations with the department as well as
the reasons for the trial court's order were contained in a letter
opinion:

"This is an action commenced by the plaintiff against the defendant alleging that the plaintiff is a legally blind person and is eligible for services available from the State Department of Social Welfare, Vocational Rehabilitation Division, Division of Services for the Blind. Plaintiff alleges that this action is commenced pursuant to K. S. A. 39-708 (*k*) which provides as follows: 'All contracts shall be made in the name of "the state board of social welfare of Kansas," and in such name the state board may sue and be sued on such contracts.' Plaintiff alleges that the defendant by and through its agents and employees entered into a contract with the plaintiff to assist plaintiff in a program of vocational rehabilitation and had assisted the plaintiff in gaining employment as prescribed by the laws of the State of Kansas, and notwithstanding the fact the plaintiff was ready, willing and able to carry out his part of the contract, the defendant, by and through its State Director and other agents and employees has refused and neglected to allow plaintiff's participation in any such program of vocational rehabilitation and assisting plaintiff in gaining employment, and for this wrongful action by the defendant, plaintiff prays for damages for breach of contract in the amount of $300,000, $85,000 of which the plaintiff seeks to recover as punitive damages.

"It is admitted that the plaintiff herein is basing his claim upon the theory of implied contract and that same was entered into in 1943 when the Vocational Rehabilitation Division first began to render services to this plaintiff. That from the period of 1942, when the State Department of Social Welfare placed this plaintiff in a position with Beech Aircraft, until 1951 plaintiff held various jobs, which included employment in the storeroom of the State Department of Social Welfare, which he held until 1947. From 1951 to 1961 the plaintiff was unemployed except for occasional legal work, and in 1963 the State Welfare Department found plaintiff employment in the Topeka Workshop for the Blind, which job he kept for a few weeks until he resigned. He has been unemployed since that time, except for managing his real estate interests.

"It is the judgment of this Court that, under the undisputed facts herein, the defendant's motion for summary judgment should be sustained, in that in this Court's judgment K. S. A. 1970 Supp. 39-708 (*k*) does not authorize suits on the theory of implied contracts for services which are outside the scope of K. S. A. 1970 Supp. 39-708. In this regard the Court cites the case of *In re Estate of Kline,* 175 Kan. 864, 267 P. 2d 519, wherein the Supreme Court stated 'Power to create liability upon the state treasury must be derived from [the] statute. Although the precise question here presented is one of first impression in this state it frequently has been held under similar statutes that absent express statutory liability imposed on the state a patient in its hospital[s] cannot recover on the theory of an implied contract for services rendered.' In that case the State Department of Social Welfare had filed suit against the estate of a deceased patient at Larned State Hospital. In its answer, the defendant claimed an offset against the amount prayed for by the plaintiff for work performed by the decedent while a patient at the hospital. The trial court sustained plaintiff's demurrer to that portion of answer and defendant appealed. The Supreme Court affirmed as above set forth.

"In *Williams v. Board of County Commissioners*, 192 Kan. 548 [389 P. 2d 795], the Supreme Court stated at page 551 'It has been held the consent of a state to be sued, as expressed by an [act] of the legislature, should be strictly construed so as not to enlarge by judicial interpretation the privilege granted.' The powers and duties of the State Board of Social Welfare are set forth in K. S. A. 39-708. The Court will not quote said statute in detail, suffice is to say that I find no powers and duties of the State Department of Social Welfare which could be made the basis for such an implied contract. On the contrary, whenever programs such as the one herein involved are established, to say that a person coming under their provisions who becomes dissatisfied with the services, even though eligible, can maintain a suit against the state without express provisions therefore by the legislature, would open a Pandora's box of litigation unparallel even in these changing times.

"Therefore, this Court is sustaining defendant's motion for summary judgment and is dismissing plaintiff's case herein. The Court is directing this judgment be spread of record as of this date and is taxing the costs to the plaintiff."

The plaintiff's argument that the district court was wrong has two steps. First, he says the statutory authorization for the department to be sued on its contracts, found in K. S. A. 1972 Supp. 39-708 (*k*), is broad enough to cover implied contracts. Second, he asserts that his relationship to the department, as one of its "clients" to whom it must by law provide benefits, is contractual in nature.

With plaintiff's first argument we might agee, as a general proposition. The cases he cites are those which hold that a governmental agency taking private property for public use has an obligation to pay for it, and this obligation is in the nature of an implied contract. *E. g., Lux v. City of Topeka*, 204 Kan. 179, 460 P. 2d 541; *Brock v. State Highway Commission*, 195 Kan. 361, 404 P. 2d 934. This is the proposition on which our inverse condemnation cases are bottomed. Suffice it to say, the department has not appropriated any of plaintiff's property, so that the type of implied contract which is based on appropriation does not exist in this case.

Which brings us to his argument that some other type of contract does exist—not express, mind you, yet not quite the conventional "implied" contract referred to above. He cites no cases to support his theory. Rather, he points to Rousseau's philosophical concept of "The Social Contract," which envisions mutual compacts, not only among the members of society, one with another, but between the members and their government. We are not disposed to quarrel with this concept as a philosophical proposition. Plaintiff, however, would have us promote a tacit agreement to

abide by society's rules into an enforceable, multilateral contract, for *any* breach of which an injured party may recover damages. This we are not prepared to do on the meager showing made here of either the existence of such contract or of any substantial recognition of its enforceability in the manner suggested by plaintiff.

Our analysis convinces us that contract law has no applicability to this case. The cases cited by the trial court are persuasive, as are its observations on the relevant statutory and policy considerations. The remedy for persons deprived by government officials of their rights under statutes designed for their benefit has always been thought to be the pursuit of any prescribed administrative remedy or, in the absence of an administrative remedy, a suit in equity to compel the performance of the officials' duty. *Thompson v. Amis,* 208 Kan. 658, 493 P. 2d 1259, and cases cited therein. The social welfare act provides such an administrative remedy by way of a "fair hearing" by an appeals committee under K. S. A. 1972 Supp. 75-3306, coupled with appellate review by the courts under K. S. A. 60-2101. *Powers v. State Department of Social Welfare,* 208 Kan. 605, 493 P. 2d 590.

It follows that the trial court correctly entered summary judgment in favor of the defendant department, and its judgment is affirmed.

APPROVED BY THE COURT.

PRAGER, J., not participating.